JUSTICE RICE,
concurring.
¶76 I concur with the Court’s holding on all issues herein, but would affirm two issues under alternative rationales.
¶77 Under Issue IB, search and seizure of the laptop, the Court examines the difference between the third-party consent necessary for a search and the third-party consent necessary for a seizure, relying upon the discussion of that issue in People v. Blair. The Court explains, in ¶ 49, that this issue arises here because 1) Officer Spaulding did not personally observe the pornographic images on the laptop and thus could not seize the computer under the plain view doctrine, and 2) “the question remains” whether Dozier’s statements were sufficient to establish the probable cause necessary to seize the laptop. Indeed, the discussion in Blair was premised upon the fact that police there “lacked probable cause to believe that defendant’s computer contained contraband or was otherwise connected with a crime.” Blair, 748 N.E.2d at 324. However, unlike Blair, I do not believe probable cause is lacking in this case, which would necessitate reaching the issue of *398 consent for the seizure. And, though the Court explains that the question of whether Dozier could consent to a search of the laptop may be immaterial to whether she could consent to its seizure, that distinction should not be taken to mean that facts which demonstrate probable cause for a search cannot also be used to demonstrate probable cause for a seizure.
¶78 Here, I believe Dozier’s statements to police did establish probable cause for the seizure. Although the District Court’s conclusions of law did not address whether Officer Spaulding had probable cause to seize the laptop, its findings of fact were nevertheless directly applicable to that issue. The court found that Dozier turned on the computer and observed multiple photographs of Lacey engaged in explicit sexual activities with her own daughter. The court described the photographs in graphic detail, and found that Dozier had reported this information to Officer Spaulding. Thus, Dozier’s actions and observations established probable cause for the seizure. See Branam, ¶ 22. The Court acknowledges that this is “arguably” so in ¶ 52, but leaves this issue unresolved in favor of determining that the evidence was properly seized under the “inevitable discovery” doctrine. I would resolve the seizure issue based upon probable cause, leaving both the consent and inevitable discovery analyses for another case.
¶79 Under Issue 2, I disagree with the Court’s conclusion that the District Court erred in determining that Lacey was not subjected to a custodial interrogation. Lacey voluntarily drove himself to the police station, parked his car in the parking garage, and entered the lobby where he had to wait for an officer to let him into the station because it was after hours and the door was locked. Lacey arrived there of his own volition. As the Court notes, “Cady asked Lacey if he wished to come to his office and talk with him and the detectives. Lacey responded that he would, telling Lieutenant Cady that he could be there around 7 p.m.” Opinion, ¶ 14 (emphasis added). The mood of the interview was cordial, with no use of intensive interrogation tactics. There was no “formal arrest or restraint on freedom of movement of the degree associated with a formal arrest” until the officers actually placed him under arrest, subsequent to his confessing to the crime. Munson, ¶ 24.
¶80 These facts are similar to those we relied upon in State v. Reavley to conclude that the defendant was not subject to a custodial interrogation. In Reavley, the defendant was also invited to come down to the station to talk to officers, and he did so. Like Lacey, Reavley chose the date and the time. Reavley, ¶ 22. Reavley arrived of his own volition, as here. Reavley, ¶ 23. The mood of Reavley’s interrogation *399 was cordial, as here. Officers were wearing plain clothes, as here, and offered Reavley something to drink, as the officers did Lacey. Reavley, ¶¶ 24,27. Lacey’s testimony that he thought he would be arrested if he did not go to the station voluntarily, and that he did not understand he would be arrested after confessing, was found to be “not credible” by the District Court. While Reavley was not arrested afterwards, as Lacey was, Reavley did not clearly confess to the crime during his statement to police, while Lacey did. At that point, an arrest was made and the issue of custody changed.
¶81 Therefore, I agree with the Court’s ultimate conclusion to affirm the District Court’s denial of Lacey’s motion to suppress his statement, but I would do so on the ground that the District Court did not err by concluding that Lacey was not subjected to a custodial interrogation.